**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SOLOMON WILLIAMS,
                    *Plaintiff,*

          and

MARA FERRARI; RHONDA CAPPS;
KEVIN BIGLOW; DOREEN FERGUSON;
BEVERLY TROTTER,
          *Plaintiffs-Appellants,*

          v.

THE BOEING COMPANY; BOEING
NORTH AMERICAN, INC., a Delaware
corp.; MCDONNELL DOUGLAS
CORPORATION,
          *Defendants-Appellees.*

No. 06-35196

D.C. No.
CV-98-00761-MJP

OPINION

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted
January 11, 2008—Seattle, Washington

Filed February 27, 2008

Before: Robert R. Beezer, A. Wallace Tashima, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

1707

**COUNSEL**

Steve W. Berman, Craig R. Spiegel (argued), Ivy D. Arai, Hagens Berman Sobol Shapiro LLP, Seattle, Washington, for the appellants.

Michael Reiss (argued), David C. Tarshes, Kristina Silja Bennard, Davis Wright Tremaine LLP, Seattle, Washington, for the appellee.

**OPINION**

TALLMAN, Circuit Judge:

Nearly ten years ago, Plaintiffs filed suit against The Boeing Company ("Boeing") claiming that they had been discriminated against in their employment on the basis of their race. The case has a complicated procedural history and has, at times, involved a number of different claims and plaintiff classes. The issues on appeal are fairly narrow. Specifically, Plaintiffs allege that between June 4, 1994, and May 28, 2000,

Boeing paid African-American salaried employees less than similarly situated Caucasian employees.

We address two separate questions. First, whether the named Plaintiffs had standing to challenge Boeing's allegedly discriminatory compensation practices for the period prior to May 28, 2000, in the district court and whether they continue to have standing on appeal. Second, whether the district court properly held that the pre-May 28, 2000, compensation discrimination claim is barred by the statute of limitation.

# I

On June 4, 1998, sixteen individual plaintiffs filed a class action against Boeing alleging that they had "been denied the opportunity for promotion, . . . subjected to a hostile work environment, and . . . retaliated against because of Boeing's policy and practice of racial discrimination." In November 1998, the plaintiffs filed a First Amended Complaint, which included substantially the same factual allegations, named additional plaintiffs, and included additional causes of action for negligent misrepresentation and breach of contract. The five Plaintiffs named in this appeal—Mara Ferrari, Rhonda Capps, Kevin Biglow, Doreen Ferguson, and Beverly Trotter—were included in the First Amended Complaint.

In January 1999, before substantial discovery had been undertaken, the parties sought court approval of a class settlement. The district court certified a settlement class and approved the proposed Consent Decree. Several class members objected to the settlement and appealed the district court's order. In *Staton v. Boeing Co.*, a prior panel of our court affirmed certification of the settlement class but rejected the Consent Decree. We determined that the distribution of proceeds between named and unnamed class members and the manner in which attorneys' fees were to be awarded did not meet the "fair, adequate, and reasonable" standard of Federal

Rule of Civil Procedure 23(e). 327 F.3d 938, 959, 972, 974, 978 (9th Cir. 2003).

On remand, Plaintiffs, represented by new lead counsel and before a different district judge, filed a Second Amended Complaint, which explicitly included a claim of compensation discrimination. The Second Amended Complaint included factual allegations relevant to the compensation discrimination claim, but did not include additional factual allegations on behalf of the individually named Plaintiffs.

In response to the Second Amended Complaint, Boeing moved for partial summary judgment. Boeing argued Plaintiffs had not previously alleged compensation discrimination and, therefore, the statute of limitation barred a claim for conduct occurring more than four years before the Second Amended Complaint was filed. The district court granted partial summary judgment in favor of Boeing on January 10, 2005. The district court dismissed Plaintiffs' compensation discrimination claim "relating to conduct or actions prior to June 11, 2000 (four years before the Second Amended Complaint was filed)." On February 15, 2005, the district court denied Plaintiffs' Motion for Reconsideration, but amended its prior order to hold the limitation period ran from May 28, 2000, four years before Plaintiffs *lodged* their Second Amended Complaint, and not June 11, 2000, four years before the complaint was actually filed.[1]

At the same time Boeing was seeking partial summary judgment on the pre-2000 compensation discrimination claim, the parties were briefing the issue of class certification. On January 21, 2005, the district court certified a class of

---

[1] For the sake of brevity, we will refer to the compensation discrimination claim found by the district court to be barred by the statute of limitation as the "pre-2000" claim. The compensation discrimination claim not barred by the statute of limitation will be referred to as the "post-2000" claim.

"African-American salaried employees employed . . . from June 6, 1994 to the present . . . seeking injunctive relief for racial discrimination in compensation and promotions." It is unclear why the district court certified a class including employees making a compensation discrimination claim from 1994 forward given that eleven days earlier it had determined that there was no viable claim for compensation discrimination arising between June 6, 1994, and May 28, 2000. Neither party contested this aspect of the class certification decision.

After the district court issued its certification order, Boeing again moved for partial summary judgment and argued that Plaintiffs' post-2000 compensation discrimination claim could not meet the legal standard required to prove a pattern and practice of disparate treatment under § 1981. In the alternative, Boeing sought dismissal of the individual Plaintiffs' post-2000 compensation discrimination claims for lack of standing and decertification of the compensation discrimination class.[2] The district court found that "the named Plaintiffs [did] not offer[ ] affidavits or other evidence that, even if taken as true, would show that they themselves have suffered injury after May 28, 2000 due to compensation discrimination" and therefore "[had] not demonstrated standing to maintain such individual claims during the relevant liability period." Because the named Plaintiffs all lacked standing to maintain individual compensation discrimination claims, the district court decertified the class with regard to the class claim.[3]

_____

[2]Boeing sought decertification of the compensation discrimination class generally, but its arguments in favor of decertification were limited to the post-2000 compensation discrimination claim. Specifically, Boeing argued that decertification was proper because none of the named Plaintiffs had standing to raise individual post-2000 compensation discrimination claims and therefore none could properly represent a class asserting such a claim. Boeing's decertification argument was not relevant or related to the pre-2000 compensation discrimination claim.

[3]Like Boeing's Motion to Decertify the Class, the district court's order refers to the class "originally certified," which included employees assert-

The district court also denied Plaintiffs' request for leave to move for intervention by an absent class member with a post-2000 compensation claim. Because the district court decertified the compensation discrimination class, it determined that "it would not be necessary or appropriate . . . to reach Boeing's request for summary judgment on the class compensation discrimination claim," and left open the possibility that absent class members could pursue "compensation discrimination against Boeing, either as individuals or as a putative class action."

In December 2005, Plaintiffs' class pattern and practice promotion discrimination claim was tried to a jury. The class disparate impact promotion discrimination claim was tried to the court. Both the jury and the court found in favor of Boeing. After trial, the district court directed entry of final judgment by the parties' stipulation under Rule 54(b) "as to all claims alleged by all members of the class" originally certified, specifically excluding compensation discrimination claims of absent class members. Plaintiffs then appealed challenging only: 1) the district court's determination that the pre-2000 compensation discrimination claim is barred by the statute of limitation, and 2) the district court's order decertifying the class.

After this appeal had been fully briefed, the district court ordered the parties to submit a joint status report, indicating

---

ing pre-2000 compensation discrimination claims, but by its reasoning applies only to the post-2000 claim. The district court recognized that it certified the compensation discrimination class without properly determining whether the named Plaintiffs satisfied the Rule 23 requirements. However, in making the decertification decision, the district court only analyzed the propriety of class certification with regard to the *post*-2000 claim. Because it had previously determined that the *pre*-2000 claim was barred by the statute of limitation, it appears that the district court did not decide whether certification of the pre-2000 class was appropriate or whether decertification was required.

Plaintiffs Ferrari, Capps, Biglow, Ferguson, and Trotter "may have individual claims remaining." The parties responded, stating that Ferrari, Capps, Biglow, and Ferguson "informed plaintiffs' counsel that they do not wish to proceed with [their] claims on an individual basis." Trotter did not respond "as to whether . . . she wants to pursue . . . her claim[ ] on an individual basis, despite plaintiffs' counsel's repeated efforts to contact [her] by phone, letters and in some cases email." Pursuant to the proposal in the joint status report, Ferrari, Capps, Biglow, and Ferguson filed an unopposed motion to dismiss their remaining individual claims with prejudice, which the district court granted on January 8, 2007. The order contained the following sentence: "This Order does not affect these plaintiffs' rights to pursue an appeal (*Ferrari, et al. v. The Boeing Co.*, No. 06-35196), which is pending in the Ninth Circuit." Trotter's claims were dismissed without prejudice the same day.

Almost a year later, and a month before oral argument was scheduled, Boeing moved to dismiss claiming that because Plaintiffs had dismissed their individual claims they lacked standing to pursue this appeal and the appeal was moot. At oral argument Boeing urged that Plaintiffs had *never* sufficiently demonstrated standing to challenge Boeing's pre-2000 compensation practices, requiring dismissal of their claim for lack of standing. Plaintiffs contended that the allegations in their Complaints were sufficient to establish standing on the pre-2000 compensation discrimination claim, that they had not abandoned that claim, and that the claims they had voluntarily dismissed were "only [the] remaining claims, *i.e.*, their individual claims for discrimination in areas other than compensation."

## II

Article III of the United States Constitution "requires a litigant to have 'standing' to invoke the power of a federal court." *Allen v. Wright*, 468 U.S. 737, 750 (1984) (quoting

*Warth v. Seldin*, 422 U.S. 490, 498 (1975)). To have standing, a "plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.* at 751. Although standing with regard to Plaintiffs' pre-2000 compensation discrimination claim was not an issue before the district court, "we have an independent obligation to examine our own and the district court's jurisdiction." *See Rivas v. Rail Delivery Serv., Inc.*, 423 F.3d 1079, 1082 (9th Cir. 2005).

## A

**[1]** "At least one *named* plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf of himself or the class." *Casey v. Lewis*, 4 F.3d 1516, 1519 (9th Cir. 1993) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494-95 (1974)). This requires that the plaintiff demonstrate that "he has sustained or is imminently in danger of sustaining a direct injury as the result of the challenged conduct." *Id.* On a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice [because] we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' " *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)) (second alteration in the original). Plaintiffs have met their burden here.

**[2]** In the Second Amended Complaint Plaintiffs alleged that they had been denied equal pay based on their race. They claimed that there were "racial differences in initial pay code assignments," and that these "differences in starting salaries tended to track with employees throughout their careers." Plaintiffs also alleged that Boeing performed internal analyses of disparities in salaries, which "often disclosed that African-Americans were paid less than their Caucasian counterparts at Boeing." Each named Plaintiff is an African-American employed by Boeing between 1994 and 2000 in a salaried

position. Plaintiffs' allegations that they sustained a direct injury in the form of less pay as a result of Boeing's discriminatory compensation practices are sufficient on a motion to dismiss to establish their standing with regard to the pre-2000 compensation discrimination claim.[4] *See United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 688-90 (1973); *Casey*, 4 F.3d at 1519 & n.2; *Harmsen v. Smith*, 693 F.2d 932, 942-43 (9th Cir. 1982).

Boeing argues Plaintiffs lack standing because they did not offer specific, individualized factual allegations of pre-2000 compensation discrimination. "[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Defenders of Wildlife*, 504 U.S. at 561. On a summary judgment motion challenging standing a plaintiff may not rest on "mere allegations, but must set forth by affidavit or other evidence specific facts" that demonstrate standing. *See id.* (quotation marks omitted).

**[3]** Boeing moved for summary judgment for lack of standing on Plaintiffs' individual *post*-2000 compensation discrimination claims and the district court dismissed those claims because Plaintiffs failed to offer "affidavits or other evidence that, even if taken as true, would show that they themselves

---

[4]Ferguson was deposed and stated that she did not have any complaints about the pay within any given job, as opposed to complaints about pay as a function of promotions. Because Ferguson affirmatively stated that she was not injured by Boeing's compensation practices, she does not have standing with regard to the compensation discrimination claim. *See Casey*, 4 F.3d at 1524. It is also not clear that Biglow, who opted out of the class and pursued his individual claims, including his compensation discrimination claim, against Boeing in district court in Kansas, has standing. However, because at least one named Plaintiff has demonstrated standing, the lack of standing with regard to these two Plaintiffs is not fatal. *See Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264 (1977).

have suffered injury after May 28, 2000 due to compensation discrimination." But Boeing never moved for summary judgment for lack of standing on Plaintiffs' *pre*-2000 compensation discrimination claim. Instead, Boeing sought summary judgment on the ground that the pre-2000 claim was barred by the statute of limitation. Because Boeing did not move for summary judgment on standing grounds, Plaintiffs were never forced to come forward with "specific facts" to support their standing for the pre-2000 claim. *See SCRAP*, 412 U.S. at 690 n.15 (noting that the defendants "object[ed] to the fact that the allegations were not more precise," but stating that "[i]f the [defendants] thought that it was necessary to take evidence, or if they believed summary judgment was appropriate, they could have moved for such relief").

**[4]** The district court determined that the pre-2000 compensation discrimination claim was barred by the statute of limitation before Plaintiffs were given the opportunity to present evidence in support of the claim.[5] Plaintiffs' allegations of compensation discrimination in the Second Amended Complaint, although not detailed or extensive, are "concrete and particularized," and "fairly traceable" to Boeing's allegedly discriminatory compensation practices. Their injury, unequal pay, would likely be redressed by a favorable decision. Absent a specific challenge requiring Plaintiffs to come forward with proof to substantiate their claim of injury, the allegations were sufficient to confer standing and, accordingly, jurisdiction lies in the district court to enter the partial summary judgment order Plaintiffs are now challenging on appeal.

---

[5]Boeing's reliance on the declarations Plaintiffs filed in opposition to Boeing's first Motion to Dismiss in 1998 is misplaced. The fact that Plaintiffs' declarations do not refer to compensation disparities is not evidence of lack of *injury*, but rather evidence that compensation discrimination was not *alleged*.

## B

In addition to having standing at the outset, a plaintiff's stake in the litigation must continue throughout the proceedings, including on appeal. *See Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920, 923 (9th Cir. 2007). Boeing argues Plaintiffs lack standing to pursue this appeal because, after the appeal was taken, they voluntarily dismissed their individual claims and no longer had an interest in the outcome of the litigation. *See Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 848 (9th Cir. 2002) (noting that to have Article III standing, it "must be likely that the injury will be 'redressed by a favorable decision' ") (quoting *Defenders of Wildlife*, 504 U.S. at 561). Boeing urges us to dismiss the appeal since "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (footnote and citations omitted).

[5] We agree with Plaintiffs, however, that the voluntary dismissal of their individual claims did not include their pre-2000 compensation discrimination claims. In January 2005, the district court held Plaintiffs' pre-2000 compensation discrimination claim was barred by the statute of limitation. Final judgment was entered against that claim on February 6, 2006.[6] Plaintiffs appealed the district court's ruling on March 7, 2006. Because the compensation discrimination claim had already been resolved, the district court's reference in its

---

[6]In April 2007, Boeing admitted that final judgment had been entered with regard to all compensation discrimination claims, pre- and post-2000, as of February 6, 2006. Their argument that the district court expressly declined to decide the class's pre-2000 compensation discrimination claim is unavailing. The district court's order decertifying the compensation discrimination class, rather than granting class-wide summary judgment, applied only to the post-2000 claim; the pre-2000 claim was resolved by the first partial summary judgment order.

October 31, 2006, Order for a Joint Status Report to claims Plaintiffs "may have had remaining" necessarily referred to claims other than Plaintiffs' compensation discrimination claims. It is the remaining non-compensation claims Plaintiffs moved to voluntarily dismiss after their appeal had been filed.[7]

Additional evidence supports this conclusion. First, Plaintiffs' Motion for an Order of Dismissal stated that dismissal would be proper under Rule 41 because dismissal was sought "before the Court has even established a discovery and pretrial schedule for their claims." There would have been no reason to establish a discovery or pretrial schedule for the pre-2000 compensation discrimination claim, which the district court had already determined was barred by the statute of limitation. Also in their Motion, Plaintiffs explicitly stated that they were not waiving their right to pursue this appeal. The district court recognized the same in its order granting the Plaintiffs' Motion. Although parties cannot "invoke the judicial power of the United States in litigation which does not present an actual 'case or controversy,' " *Sosna v. Iowa*, 419 U.S. 393, 398 (1975) (citation omitted), Plaintiffs' statement that they were not waiving their right to appeal and the district court's recognition of the same may be fairly read as an effort to confirm that Plaintiffs were not abandoning the claims that were pending on an appeal, rather than an attempt to create jurisdiction where none existed.

[6] Since the district court had jurisdiction to enter partial summary judgment in favor of Boeing on Plaintiffs' pre-2000

---

[7]Plaintiffs' individual *promotion* discrimination claims remained after final judgment had been entered. These claims were not resolved at the trial, which focused only on the *class* promotion discrimination claims. The Supreme Court has held that judgment in a class action, which determines that an employer did not engage in a pattern or practice of racial discrimination against a certified class of employees does not preclude individual class members from maintaining subsequent civil actions alleging individual claims of discrimination against the employer. *Cooper v. Fed. Res. Bank*, 467 U.S. 867, 876-78 (1984).

compensation discrimination claim, and since Plaintiffs continue to have standing to pursue this appeal, we deny Boeing's Motion to Dismiss and we address the merits of the district court's statute of limitation ruling.

## III

**[7]** Plaintiffs' compensation discrimination claim, brought pursuant to 42 U.S.C. § 1981, is subject to a four-year statute of limitation. 28 U.S.C. § 1658(a). Boeing argues that the statute of limitation bars the compensation discrimination claim for acts of discrimination occurring before May 28, 2000, four years before Plaintiffs' Second Amended Complaint was lodged. Plaintiffs argue that the limitation period begins to run in 1994, four years before their Original and First Amended Complaints were filed. Plaintiffs advance a number of theories in support of their argument: 1) that the Original and First Amended Complaints stated a cause of action for compensation discrimination; 2) that even if the Original and First Amended Complaints did not state a cause of action for compensation discrimination, the allegations in the Second Amended Complaint relate back to the earlier filings; 3) that, in any case, Boeing is judicially estopped to assert that Plaintiffs did not state a cause of action for compensation discrimination in the Original or First Amended Complaint; and 4) that the limitation period was tolled from the time the district court approved the Consent Decree until, at the earliest, it was finally rejected by this court. We consider each of these arguments in turn.

## A

If Plaintiffs' Original or First Amended Complaint alleged a claim of compensation discrimination, the statute of limitation would run from 1994, not 2000. The district court found Plaintiffs' "Second Amended Complaint is the first time they allege a claim for racial discrimination in compensation for salaried employees." We determine de novo whether the

Original and First Amended Complaints asserted a compensation discrimination claim. *See Dominguez v. Miller (In re Dominguez)*, 51 F.3d 1502, 1508 n.5 (9th Cir. 1995) ("Because the question whether a complaint provides sufficient information to satisfy the notice pleading requirements is essentially a question of law, we review that . . . question de novo.").

**[8]** Even though heightened pleading is not required in discrimination cases, the complaint must still "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quotation omitted). Plaintiffs rely on the allegation in the First Amended Complaint that they were "subjected to different terms and conditions of employment," arguing that this allegation is "not limited to particular employment benefits." Plaintiffs' claim that, under *Swierkiewicz*, such "conclusory allegations of discrimination" are sufficient to provide notice under Federal Rule of Civil Procedure 8. *See Maduka v. Sunrise Hosp.*, 375 F.3d 909, 912 (9th Cir. 2004).

In *Swierkiewicz*, the district court dismissed the plaintiff's complaint because he failed to "allege facts constituting a prima facie case of discrimination" under the *McDonnell-Douglas* burden shifting test. 534 U.S. at 509. The Supreme Court reversed holding that a plaintiff need not set forth a prima facie case of discrimination in his complaint to survive a motion to dismiss. *Id.* at 515. The Court eschewed the rule adopted in some circuits employing heightened pleading requirements for discrimination cases and applied the same general notice pleading requirements applicable to the majority of civil actions. *See id.* at 510 n.2, 513. Thus, the fact that the plaintiff included only conclusory allegations of discrimination in his complaint, insufficient to raise an inference of discrimination for a prima facie case, did not defeat his claim because his complaint "detailed the events leading to his termination, provided relevant dates, and included the ages and

nationalities of at least some of the relevant persons involved with his termination," providing "fair notice of what [his] claims [were] and the grounds upon which they rest[ed]." *Id.* at 514-15.

**[9]** Here, Plaintiffs' general allegations that they were discriminated against with regard to "terms of employment" did not provide "fair notice" of the compensation discrimination claim. *See Barcume v. City of Flint*, 819 F. Supp. 631, 638 (E.D. Mich. 1993) (finding that allegation of discrimination in the "terms and conditions of employment" did not provide defendants notice of claims other than those specifically alleged in the complaint); *Davis v. Bethlehem Steel Corp.*, 600 F. Supp. 1312, 1318-19 (D. Md. 1985), *aff'd*, 769 F.2d 210 (4th Cir. 1985) (in the context of tolling noting that "notice only of the fact that [defendants] were being charged with racial discrimination in any and all types of general employment practices . . . does not give the defendants . . . fair notice").

**[10]** Nor do the specific references to pay in the Original and First Amended Complaints provide notice of a compensation discrimination claim. *See Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001) ("Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief."). The Original and First Amendment Complaints explicitly refer to Plaintiffs having been denied promotions, subjected to a hostile work environment, and retaliated against on the basis of their race. The specific factual allegations included in the Complaints support these claims. The Complaints do not make any general or specific allegations of salary inequities apart from promotion-related differences; the references to pay in the Original and First Amended Complaint are related only to the pay increases accompanying promotions. Such factual averments are not sufficient to allege a separate claim for compensation discrimination. *See Richards v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988)*; cf. Swierkiewicz*, 534 U.S. at 514-15

(holding that plaintiff's complaint, which "included the *ages* and *nationalities* of at least some of the relevant persons involved with his termination" was sufficient to provide notice of plaintiff's age and national origin discrimination claims) (emphasis added); *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) (holding that prisoner's complaint alleging that he was "punished for filing a grievance" against a correctional officer was sufficient to provide notice of claim that he was retailed against for exercising his First Amendment rights).

Plaintiffs' reliance on the language of the Consent Decree and our previous description of the case as proof of what was alleged in the Original and First Amended Complaints is also unavailing. First, the Consent Decree never became effective and by its terms is not admissible as evidence on this or any other issue.

**[11]** The "Litigation Background" section of the Consent Decree describes the action as follows:

> The Plaintiffs in the Alleged Class Action contend that Boeing has engaged in a policy or pattern or practice of unlawful Discrimination on the basis of Race against them . . . in respect to promotions within the hourly ranks, promotions from hourly positions into managerial and other salaried positions, promotions among salaried positions, training, education, skills and career development, performance appraisals, transfers, *compensation*, discharge, discipline and other terms, benefits and conditions of employment.

Although this provision implies that Plaintiffs alleged a compensation discrimination claim, "the intent of the language used in the Decree was to effectuate a broad release of all possible claims," including claims that had not been alleged in the Complaints. *See* 4 Alba Conte & Herbert B. Newberg, NEW-

BERG ON CLASS ACTIONS § 12:15 (4th ed. 2007) ("In order to stifle the threat of further litigation, the defendant will seek a judgment as broad as the law permits."). This intent is supported by the fact that the language cited also refers to claims for discharge and discipline discrimination, neither of which is purportedly alleged in the Original or First Amended Complaints. Further, as the district court found, the relief provided in the Consent Decree was aimed at remedying promotion discrimination and the allegedly hostile work environment, not compensation disparities. The one passing reference to compensation in the 40-page Consent Decree that never became effective is not sufficient to prove that the Original and First Amended Complaints set forth a compensation discrimination claim, especially when it is clear from the face of the pleadings that such a claim was not alleged and the only complaint about compensation was as it related to higher pay accompanying the denied promotions.

Plaintiffs also rely on a description of the litigation in our decision in *Staton* to support their claim that compensation discrimination was alleged in the Original and First Amended Complaints. In *Staton* we stated: "The action alleged that Boeing's promotion, *compensation*, and career development decisions were systematically discriminatory and that Boeing created and permitted a racially hostile work environment," 327 F.3d at 946 (emphasis added), and "[T]he class here complains of a complex of discriminatory practices that includes *compensation*, training, and work environment in addition to promotions," *id.* at 955 (emphasis added).

**[12]** These statements merely characterized Plaintiffs' cause of action and were not essential to the holding. For example, the first statement, describing Plaintiffs' allegations, does not include retaliation, but Plaintiffs continue to assert that the Original and First Amended Complaints included a retaliation claim. With regard to the second statement, we were pointing out that "commonality" was not defeated merely because different types of discrimination affected dif-

ferent class members. 327 F.3d at 955. Although we may have more precisely described the "other alleged axes of discrimination" applicable to class members unable to assert promotion discrimination claims, the reference to compensation was merely illustrative and does not have any preclusive effect here. *See Thacker v. Fed. Commc'ns Comm'n (In re Magnacom Wireless, LLC)*, 503 F.3d 984, 993-94 (9th Cir. 2007) ("In our circuit, statements made in passing, without analysis, are not binding precedent.").

**[13]** Plaintiffs did not allege compensation discrimination based on race sufficiently to provide notice of that claim to Boeing under Federal Rule of Civil Procedure 8(a). The subsequent characterizations of Plaintiffs' claims, in the Consent Decree and in our prior opinion, do not provide evidence to the contrary.

**B**

Plaintiffs contend that even if the Original and First Amended Complaints did not state a claim of compensation discrimination, the allegations of compensation discrimination in the Second Amended Complaint relate back to the earlier filings under Federal Rule of Civil Procedure 15(c) and are not barred by the statute of limitation. The district court rejected this argument. We review de novo the district court's application of the relation-back doctrine under Rule 15(c).[8] *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1127 (9th Cir. 2006).

---

[8]Boeing contends that we sometimes apply the abuse of discretion standard to relation back issues. The cases it cites, however, deal with review of the district court's decision to grant or deny a motion to amend a complaint that will relate back under Rule 15(c). *See Eaglesmith v. Ward*, 73 F.3d 857, 860 (9th Cir. 1995); *Louisiana-Pacific Corp. v. ASARCO, Inc.*, 5 F.3d 431, 434 (9th Cir. 1993). Here, Plaintiffs were granted leave to file their Second Amended Complaint. The issue is whether, once filed, it did in fact relate back.

**[14]** Rule 15(c)(1)(B) provides: "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ." Claims arise out of the same conduct, transaction, or occurrence if they "share a common core of operative facts" such that the plaintiff will rely on the same evidence to prove each claim. *See Martell v. Trilogy Ltd.*, 872 F.2d 322, 325-26 (9th Cir. 1989) (finding that amended complaint related back where amended complaint added new theory of recovery based on facts alleged in original complaint); *Percy v. S.F. Gen. Hosp.*, 841 F.2d 975, 978 (9th Cir. 1988).[9]

**[15]** Here, there is no common core of operative facts between the compensation discrimination claim and the promotion discrimination, hostile work environment, and retaliation claims. Plaintiffs' Second Amended Complaint had to include additional facts to support the compensation discrimination claim. As the district court noted, different statistical evidence and witnesses would be used to prove the compensation and promotion discrimination claims because of the different processes Boeing uses to make salary and promotion decisions. The fact that both the compensation and promotion discrimination claims involve allegations of racial discrimination does not alter our conclusion. *See Barcume*, 819 F. Supp. at 636; *cf. Jones v. Greenspan*, 445 F. Supp. 2d 53, 56-57 (D.D.C. 2006). The compensation discrimination claim is a new legal theory depending on different facts, not a new legal theory depending on the same facts. It does not relate back under Rule 15(c).[10] *See Markus v. Gschwend (In re Markus)*,

---

[9]The requirement that the allegations in the amended complaint arise from the same conduct, transaction, or occurrence is meant to ensure that the original pleading provided adequate notice of the claims raised in the amended pleading. *Martell*, 872 F.2d at 326. As noted in Part III.A, the allegations of the Original and First Amended Complaints did not put Boeing on notice of Plaintiffs' compensation discrimination claim.

[10]In this regard, it is useful to compare Plaintiffs' First Amended Complaint, which added claims of negligent misrepresentation and breach of

313 F.3d 1146, 1151 (9th Cir. 2002); *Percy*, 841 F.2d at 979-80; *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1314 (9th Cir. 1982).

Plaintiffs contend that the compensation discrimination claim must be based on "the identical factual predicate as the claims alleged" in the Original and First Amended Complaints because otherwise the compensation discrimination claim could not have been released by the Consent Decree. *See* 5 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 16:7 (4th ed. 2007) ("It is well-settled that in order to achieve a comprehensive settlement . . . a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action."). Because the compensation discrimination claim satisfies the identical factual predicate standard for settlement, Plaintiffs argue, it necessarily satisfies the same conduct, transaction or occurrence standard for relation back.

[16] Plaintiffs' argument assumes that the compensation discrimination claim would have been released by the Consent Decree if it had been finally approved.[11] While Boeing may have drafted the settlement agreement to include as broad a release as possible, the release would have only been *enforceable* as to subsequent "claims relying upon a legal theory different from that relied upon in the class action com-

contract based on the same allegation of discrimination included in the Original Complaint with Plaintiffs' Second Amended Complaint, which adds an entirely new claim for compensation discrimination unrelated to the promotion, hostile work environment, and retaliation claims.

[11]Rather than conceding that the compensation discrimination claim would not have been released by the Consent Decree, Boeing argues that a claim may satisfy the "identical factual predicate" standard for settlement even if it doesn't satisfy the "same conduct, transaction, or occurrence" standard for relation back. We need not and do not reach this issue.

plaint, but depending upon the same set of facts." 4 NEWBERG ON CLASS ACTIONS § 12:15. In any case, the scope of the Consent Decree is not relevant to whether the compensation discrimination claim relates back to Original and First Amended Complaints because it is clear from the pleadings themselves that the compensation discrimination claim included in the Second Amended Complaint does not arise from the same "conduct, transaction, or occurrence" alleged in the Original and First Amended Complaints. Finally, by its terms, the Consent Decree is inadmissible as evidence "regarding any . . . issue or subject" because it never received final judicial approval. Plaintiffs' compensation discrimination claim, alleged for the first time in the Second Amended Complaint, does not relate back to the Original and First Amended Complaint.

## C

Plaintiffs next contend that Boeing should be judicially estopped to argue that Plaintiffs did not allege compensation discrimination in the Original and First Amended Complaints because such a position is contrary to the position Boeing took in the Consent Decree. The district court held that "nothing in the Consent Decree judicially estops Boeing from obtaining partial summary judgment on the salary compensation claim." We review this holding for abuse of discretion. *See Broussard v. Univ. of Cal.*, 192 F.3d 1252, 1255 (9th Cir. 1999); *Johnson v. Or. Dep't of Human Res.*, 141 F.3d 1361, 1364 (9th Cir. 1998) ("Because a court invokes judicial estoppel at its discretion, we review the application of judicial estoppel to the particular facts of a case for abuse of discretion.").

[17] The equitable doctrine of judicial estoppel is not reducible to an exhaustive formula. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). However, a party generally will be judicially estopped to assert a certain position when: 1) the party's current position is "clearly inconsistent" with its ear-

lier position, 2) the party was successful in persuading a court to accept its earlier position, and 3) the party would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750-51.

**[18]** The district court focused on the first factor—whether Boeing had taken clearly inconsistent positions in the litigation. The district court noted that the "Consent Decree language refers to a compensation claim alleged by Plaintiffs," but found that this was not sufficient to establish that "Boeing's current position that Plaintiffs never asserted a salary compensation claim until they filed their Second Amended Complaint [was] . . . 'clearly inconsistent' with the position Boeing took in the Consent Decree." Specifically, the district court recognized that a Consent Decree may release claims broader than those included in the pleadings and emphasized that the Consent Decree did not include any relief regarding compensation discrimination as it did for promotion discrimination, harassment, and retaliation. The district court did not abuse its discretion in refusing to rely on one reference to compensation in the Consent Decree as determinative of the position Boeing had taken previously in the litigation. *See United Steel Workers v. Ret. Income Plan for Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 563 (9th Cir. 2008).

Because the district court found that Boeing's current position was not clearly inconsistent with the position Boeing had allegedly taken in the Consent Decree, the district court did not address other factors relevant to judicial estoppel except to state that "nothing in the Consent Decree judicially estops Boeing from obtaining partial summary judgment." *See Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549, 554 (9th Cir. 2006) (noting that "an inconsistent factual or legal position is a threshold requirement of the doctrine" of judicial estoppel) (quoting *United States v. Lence*, 445 F.3d 1047, 1051 (9th Cir. 2006)). Looking briefly at the other two considerations listed above, it is clear that the district court did

not act "clearly against the logic and effect of the facts as are found." *See Rabkin v. Or. Health Scis. Univ.*, 350 F.3d 967, 977 (9th Cir. 2003) (quotation omitted). First, there was no risk of inconsistent judicial determinations because the Consent Decree was not accepted on appeal and never became effective. *Cf. New Hampshire*, 532 U.S. at 752-53. Boeing will not derive an unfair advantage if not judicially estopped; the Consent Decree was never effective and Boeing was not protected against additional claims. Any advantage that did enure to Boeing was not "unfair" because Boeing was not precluded from seeking a release broader than the pleadings. 4 NEWBERG ON CLASS ACTIONS § 12:15. Plaintiffs' judicial estoppel argument therefore fails.

## D

Plaintiffs' final argument is that the statute of limitation on their compensation discrimination claim was tolled from January 22, 1999, when the parties filed their joint motion for approval of the Consent Decree, until our prior panel overturned the Consent Decree on April 29, 2003, or later. The district court rejected this argument in its ruling on Plaintiffs' Motion for Reconsideration. We review de novo whether the statute of limitation is tolled. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 780 (9th Cir. 2002).

Plaintiffs first argue that, under the doctrine of issue preclusion, the district court's approval of the Consent Decree prevented class members from asserting compensation discrimination claims even while it was pending on appeal. Because the Consent Decree barred individual lawsuits by class members, Plaintiffs argue, the statute of limitation was tolled until the Consent Decree was rejected. However, by its own terms, the Consent Decree was not in effect while on appeal. The district court properly concluded that Plaintiffs could have filed a compensation discrimination claim while the Consent Decree was on appeal and Boeing could not have

asserted an affirmative defense that the claim had been released, defeating Plaintiffs' tolling argument.

**[19]** Plaintiffs also rely on *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), for the proposition that the statute of limitation was tolled from the time the district court certified the settlement class and continued to be tolled despite the *Staton* decision because *Staton* upheld certification of the settlement class. Plaintiffs misread *American Pipe*, which holds that commencement of a class action itself, not the class certification decision, suspends the statute of limitation as to all asserted members of the class, even if the class is eventually decertified. 414 U.S. at 554; *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 350 (1983). Tolling is fair in such a case because when the complaint is filed defendants have notice of the "substantive claims being brought against them." *Crown, Cork & Seal Co.*, 462 U.S. at 352-53 (quotation omitted). However, the tolling rule does not "leave[ ] a plaintiff free to raise different or peripheral claims following denial of class status." *Id.* at 354 (Powell, J. concurring). As described in detail in Part III.A, neither the Original nor the First Amended Complaints stated a claim for compensation discrimination. Therefore the statute of limitation was not tolled for that claim as it would have been for the promotion discrimination, hostile work environment, and retaliation claims properly raised.

# IV

**[20]** Plaintiffs have also challenged the district court's order decertifying the compensation discrimination class. To the extent Plaintiffs are challenging the district court's decision to decertify the post-2000 compensation discrimination class, the district court did not abuse its discretion because the named Plaintiffs concede that they do not have standing with regard to the post-2000 claim. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (holding that named plaintiff who did not have a viable claim against

defendant could not serve as a class representative and vacating class certification accordingly).

**[21]** To the extent Plaintiffs are challenging the district court's decision to decertify the pre-2000 compensation discrimination class, it is not clear that there is an order to challenge. *See supra* note 3. In any case, the challenge is moot because the pre-2000 claim is barred by the statute of limitation—there is no viable claim for a class to assert. *See Amati v. City of Woodstock*, 176 F.3d 952, 957 (7th Cir. 1999) ("Since the plaintiffs, having lost on the merits in this court, cannot possibly benefit from class certification, and the defendants are not seeking it, we shall treat the issue as moot . . . .").

## V

Plaintiffs' allegations of injury in the Second Amended Complaint were sufficient to establish standing. The district court had jurisdiction to decide whether the pre-2000 compensation discrimination claim was barred by the statute of limitation. We have jurisdiction to review the district court's decision because Plaintiffs continued to have standing on appeal; they did not abandon their individual pre-2000 compensation discrimination claims. Boeing's Motion to Dismiss is DENIED.

On the merits, the district court properly determined that Plaintiffs' pre-2000 compensation discrimination claim is barred by the statute of limitation. The district court's order granting partial summary judgment in favor of Boeing on Plaintiffs' pre-2000 compensation discrimination claim is AFFIRMED. Because the claim is barred by the statute of limitation, we need not decide whether the class was properly certified or decertified, and we DISMISS this portion of Plaintiffs' appeal as moot.

**AFFIRMED IN PART; DISMISSED IN PART AS MOOT.**

Each party shall bear its own costs.