

FILED

DEC 20 2023

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>DANA AARON LINETT,<br><br>          Debtor. | BAP No. SC-23-1102-FBC<br><br>Bk. No. 19-05831-MM11 |
| DANA AARON LINETT; EARLY<br>AMERICAN HISTORY AUCTIONS,<br>INC.,<br><br>          Appellants,<br>v.<br>THOMAS C. HEBRANK, Trustee of the<br>Irrevocable Linett Pool Trust Agreement;<br>JULIA M. GARWOOD; JULIA M.<br>GARWOOD, a Professional Law<br>Corporation, separately and alternatively<br>doing business as Garwood Family Law<br>& Mediation; LAW OFFICES AND<br>MEDIATION CENTER OF JULIA M.<br>GARWOOD, A Professional<br>Corporation; CASEY A. REEVES,<br>          Appellees. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Southern District of California
Margaret M. Mann, Bankruptcy Judge, Presiding

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Before: FARIS, BRAND, and CORBIT, Bankruptcy Judges.

## INTRODUCTION

Chapter 11[1] debtor Dana Aaron Linett and his corporation Early American History Auctions, Inc. ("Early American") appeal the bankruptcy court's order approving a settlement between Thomas C. Hebrank, trustee of the Irrevocable Linett Pool Trust Agreement ("Trustee"), and certain creditors. They argue that the bankruptcy court should have analyzed the settlement agreement as a sale, such that the Trustee was required to accept their superior overbid.

Mr. Linett and Early American lack standing to appeal the order: they admit that they are not creditors; the debtor does not have standing in an admittedly insolvent case like this one; and disappointed bidders do not have standing to appeal. We therefore DISMISS this appeal.

## FACTS[2]

### A. Prepetition events

#### 1. The marital dissolution

In 2013, Mr. Linett's wife, Barbara Linett, filed a petition for

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and related cases. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

dissolution of marriage. Mr. Linett retained attorney Julia M. Garwood to represent him in the dissolution proceedings. (We refer to Ms. Garwood, her law corporation, and others collectively as the "Garwood Parties"). The parties entered into a Marital Settlement Agreement (the "MSA") and obtained judgment on the MSA from the state superior court.

Thereafter, a dispute arose about Mr. Linett's spousal support payments to Mrs. Linett under the MSA. Mr. Linett tried to set aside the judgment, but he was unsuccessful.

### 2. The malpractice lawsuit and counterclaims

Mr. Linett filed a complaint in state superior court against the Garwood Parties for professional negligence and breach of fiduciary duty (the "Malpractice Action"). He alleged that the Garwood Parties failed to adequately advise him regarding his spousal support obligations under the MSA and that he lost millions of dollars as a result.

The Garwood Parties filed counterclaims against Mr. Linett for breach of contract and other claims.

### B. The chapter 11 petition

In September 2019, Mr. Linett filed a chapter 11 petition. He scheduled the Malpractice Action and two other lawsuits as assets.

Ms. Garwood filed a proof of claim for $200,533.87 based on the counterclaims in the Malpractice Action (the "Garwood Claim"). Mr. Linett objected to the Garwood Claim.

## C. The chapter 11 plan and trust agreement

Mr. Linett and Mrs. Linett proposed a joint liquidating plan (the "Plan"). The bankruptcy court confirmed the Plan.

The Plan provided that most of Mr. Linett's assets would be transferred to a liquidating trust (the "Trust") created by the Irrevocable Linett Pool Trust Agreement (the "Trust Agreement"). The Trust Agreement was incorporated in the Plan. The Plan provided that the Trustee had exclusive authority and discretion to settle or compromise any claim or dispute.

Similarly, section 4.1.1 of the Trust Agreement provided that "[t]he Trustee shall prosecute all of the Trustor's Claims to the extent that the Trustee has determined that there is a substantial likelihood that net Assets will be made available as a result thereof." Section 4.2 provided that "[t]he Trustee shall liquidate the Trust Assets, whether by collection in the normal course, auction sale or otherwise in the sole reasonable business discretion of Trustee . . . ."

Section 6.1.7 provided that the Trustee's powers explicitly included the ability "[t]o compromise or otherwise adjust any claims or litigation against or in favor of the Trust, subject to Bankruptcy Court approval." However, section 6.3.1 provided that he could "not permit or enable Trustor or any other person acting as a Liquidating Agent to sell, purchase, exchange or otherwise deal with or dispose of any trust property . . . for less than fair and adequate consideration in money or money's worth."

## D. The settlement motion

The Trustee elected to pursue the Malpractice Action against the Garwood Parties. Prior to trial, the Trustee and the Garwood Parties reached a settlement.

In relevant part, the settlement agreement (the "Garwood Settlement") provided that the Garwood Parties would pay the Trustee $50,000; the Garwood Parties would withdraw the Garwood Claim; the Trustee and the Garwood Parties would dismiss with prejudice their respective claims against each other; and the parties would exchange a mutual general release of all claims.

The Trustee sought bankruptcy court approval of the Garwood Settlement. He contended that the settlement under Rule 9019 met the "fair and equitable" standard under *Goodwin v. Mickey Thompson Entertainment Group, Inc. (In re Mickey Thompson Entertainment Group, Inc.)*, 292 B.R. 415, 420 (9th Cir. BAP 2003), and was fair, reasonable, and adequate under *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986).

Shortly before the Trustee sought approval of the settlement, Early American acquired a proof of claim ("Claim 14") from Deborah Linett (apparently Mr. Linett's sister), who asserted a claim for $321,699.31 based on loans she made to Mr. Linett and another of his companies. Early American thus became a creditor of the estate.

Mr. Linett and Early American jointly opposed the settlement. (We refer to both Mr. Linett and Early American for this purpose as

5

"Mr. Linett.") Mr. Linett argued that the court should not approve the Garwood Settlement because the $50,000 proposed settlement was not "fair and adequate consideration." Instead, he offered to purchase the Garwood Settlement for $75,000 plus ten percent of his recovery in the Malpractice Action. Additionally, he contended that the estate was administratively insolvent, so the release of the Garwood Claim was worthless because unsecured creditors would not receive a distribution in any event.

After further briefing and a hearing, the bankruptcy court entered an order approving the Garwood Settlement (the "Settlement Order"). It held that the Trustee had the authority to settle the Malpractice Action and had properly considered the settlement pursuant to the Trust Agreement. It determined that the question of whether the Garwood Settlement was fair and equitable was satisfied by the factors in *A & C Properties*. It also rejected Mr. Linett's argument that his offer was superior, holding instead that, under *Mickey Thompson*, "the court is not required to consider the [request to approve the settlement] as a sale motion since it is a mutual release and not a one-sided release." The bankruptcy court later denied Mr. Linett's request for a stay pending appeal (the "Stay Order").

Mr. Linett and Early American timely appealed from the Settlement Order and Stay Order.[3]

---

[3] In the notice of appeal, Mr. Linett and Early American state that they are appealing from both the Settlement Order and the Stay Order. They do not mention the Stay Order in their briefs or allege any error, so they have waived that portion of their appeal. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not

In July 2023, while this appeal was pending, Early American transferred Claim 14 back to Deborah Linett. It thus no longer held a claim against Mr. Linett's estate.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (O).

Although the issue of Mr. Linett's and Early American's standing was not raised by any party, we have an obligation to examine our own jurisdiction under 28 U.S.C. § 158. *See Aheong v. Mellon Mortg. Co. (In re Aheong)*, 276 B.R. 233, 238 (9th Cir. BAP 2002) ("The parties have not raised Debtor's standing as an issue on this appeal, but we have an independent duty to consider standing."). It is always the appellant's burden to establish standing. *See Hasso v. Mozsgai (In re La Sierra Fin. Servs., Inc.)*, 290 B.R. 718, 726 (9th Cir. BAP 2002).

The Ninth Circuit has recently held that, "[t]o appeal a bankruptcy court's order, a party must establish Article III standing and that it is 'aggrieved' by the order." *Clifton Cap. Grp., LLC v. Sharp (In re E. Coast Foods, Inc.)*, 80 F.4th 901, 905 (9th Cir. 2023). To establish Article III standing, an appellant must "show that it has: (1) suffered an 'injury in fact' that is concrete, particularized, and actual or imminent, (2) the injury is 'fairly traceable' to the defendant's conduct, and (3) the injury can be

_____

raised by a party in its opening brief are deemed waived.").

7

'redressed by a favorable decision.'" *Id.* at 906. "In addition to having standing at the outset, a plaintiff's stake in the litigation must continue throughout the proceedings, including on appeal." *Williams v. Boeing Co.*, 517 F.3d 1120, 1128 (9th Cir. 2008).

Mr. Linett and Early American do not have standing to pursue this appeal. Mr. Linett is the debtor, but a debtor generally does not have standing to appeal from an order disposing of estate property unless there are enough assets to permit a distribution to the debtor. *See Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983) (holding that, under the "person aggrieved" standard, "a hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate" because "[s]uch an order would not diminish the debtor's property, increase his burdens, or detrimentally affect his [or her] rights"); *In re Rynda*, Case No. 09-41568 EDJ-7, 2010 WL 1495180, at *1 (Bankr. N.D. Cal. Apr. 14, 2010) ("Normally, debtors, as such, do not have standing to object to sales (or compel sales) without a showing that the debtor has a financial stake in the outcome."). Mr. Linett took the position that the estate was "hopelessly insolvent" and that his unsecured creditors would not receive any distribution; accordingly, he could not have been "aggrieved" by the Garwood Settlement, and it did not cause him any injury-in-fact.

Creditors generally have standing to object to dispositions of estate property. *See Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 290 n.13 (9th Cir. BAP 2005) (stating that, "in the context of a sale or other

disposition of estate assets, creditors have standing to appeal . . .”); *see generally Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988) (“As a general rule, creditors have standing to appeal orders of the bankruptcy court disposing of property of the estate because such orders directly affect the creditors’ ability to receive payment of their claims.”). Early American became a creditor when it acquired Claim 14. But Early American assigned Claim 14 to Deborah Linett while this appeal was pending. Thus, Early American is no longer a creditor and no longer has standing.

At oral argument, counsel for the appellants conceded that Early American is “not proceeding as a creditor.” Rather, counsel asserted that, as unsuccessful bidders, Mr. Linett and Early American had standing to appeal the Settlement Order. This is incorrect.

An aggrieved prospective bidder does not have standing to appeal a sale or settlement order. We have stated that, “in the context of a sale or other disposition of estate assets, . . . disappointed prospective bidders who are not creditors usually do not have standing to appeal.” *In re Lahijani*, 325 B.R. at 290 n.13; *see also In re Verity Health Sys. of Cal., Inc.*, Case No. 2:18-bk-20151-ER, 2020 WL 7053770, at *2 (Bankr. C.D. Cal. Aug. 7, 2020) (“The statutes governing the sale of assets of bankruptcy estates are intended to protect the creditors of such estates and not prospective purchasers. A disappointed prospective purchaser . . . is not within the zone of interests intended to be protected under the bankruptcy statutes and regulations.” (cleaned up)); *In re Douglas J. Roger, M.D., Inc., APC*, 393 F. Supp. 3d 940,

958 (C.D. Cal. 2019) ("Dr. Roger is, at best, a 'disappointed prospective bidder' in relation to the avoidance claims against Dr. Roger currently being prosecuted by Trustee, and as a prospective bidder Dr. Roger lacks standing to challenge a sale order by the bankruptcy court unless Dr. Roger challenges a bankruptcy sale transaction on the ground of fraud, mistake, or unfairness resulting in a lower bid than the trustee could obtain on the open market.").

The appellants do not point to any irregularity in the settlement process and only contend that they offered the Trustee a superior option. They do not allege any way in which they were affected pecuniarily or otherwise suffered injury due to the rejection. The fact that the Trustee did not accept their competing offer does not make them aggrieved parties or confer Article III standing on them to appeal the Settlement Order. Accordingly, we lack jurisdiction to decide this appeal.

## CONCLUSION

Neither Mr. Linett nor Early American has standing to appeal the Settlement Order. We therefore DISMISS this appeal.